UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JANE DOE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 11-40077-TSH |
| ) | |
| WORD OF LIFE ) | |
| FELLOWSHIP, INC. ) | |
| and STEPHEN H. BOWEN ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM OF DECISION AND ORDER ON
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**
June 19, 2012

**Hillman, J.**

### Nature of the Proceeding

The Plaintiff, Jane Doe ("Doe" or "Plaintiff") seeks monetary damages from the Defendants Word of Life Fellowship ("WOL") and Stephen Bowen ("Bowen") for sexual assaults allegedly perpetrated upon her by Bowen in 2000 and 2001. The Defendants have separately moved for summary judgment on the grounds that the action is barred by the statute of limitations. For the reasons set forth below, I grant those motions.

### Background

Word of Life is a non-profit, New York corporation located in Schroon Lake, New York, which operates a bible school, conference center, summer camp and outreach programs. Stephen Bowen, a resident of New York, was an employee of WOL from 1996 to 2008 as a program

administrator. He was married and 42 years old at the time. Bowen also had responsibility for the waterfront at a church summer camp that WOL ran in Schroon Lake.

In the summer of 2000, Doe was 17 years old and lived with her family in a strict Christian home in Massachusetts. She had a summer job as a lifeguard at WOL's church camp and was supervised by Bowen who was a longstanding friend of Doe's family. Doe's attendance at the summer camp was the result of WOL's solicitation of campers at Doe's church in Massachusetts. In the fall of 2000, Bowen visited Doe in Massachusetts and forcibly kissed her. In the Winter of 2000-2001, Doe stayed at Bowen's home in New York for a weekend and a second sexual encounter took place which included Bowen performing non-consensual oral sex on Doe. The relationship continued in New York and Massachusetts until the Fall of 2001. Doe turned 18 on February 9, 2001. She estimates that Bowen and she had sexual contact approximately 14 times with six of those incidents in Massachusetts and the rest in New York. The relationship terminated in the Fall of 2001.

Thereafter, Doe experienced emotional difficulties which included poor academic performance, problems with establishing and maintaining relationships with men, and sexually promiscuous conduct. Between May 15, 2007 and March 6, 2008, she counseled with Fran Peterson, a licensed mental health clinician. Doe sought Ms. Peterson's services because of problems that she was having in an ongoing relationship at that time. During those sessions, they discussed Doe's relationship with Bowen and how it adversely affected her relationship with other men. Doe was told by Petersen that what had happened between the two was wrong.

In December of 2009, Doe began to counsel with Pastor Tom Crouse from the Holland Congregational Church. Pastor Crouse also counseled Doe that she had been victimized by

Bowen. On March 7, 2011, Doe filed suit in the Worcester Superior Court. That case was removed to this court on diversity of citizenship grounds.

## Discussion

Summary judgment is appropriate where, "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Carroll v. Xerox Corp.*, 294 F.3d 231, 236 (1st Cir. 2002), citing Fed. R. Civ. P. 56(c). "A 'genuine' issue is one that could be resolved in favor of either party, and a 'material fact' is one that has the potential of affecting the outcome of the case." *Sensing v. Outback Steakhouse of Florida, LLC*, 575 F.3d 145, 152 (1st Cir. 2009), quoting *Calero-Cerezo v. U.S. Dep't. of Justice*, 355 F.3d 6, 19 (1st Cir. 2004).

When considering a motion for summary judgment, the Court construes the record in the light most favorable to the nonmoving party and makes all reasonable inferences in favor thereof. *See Sensing*, 575 F.3d at 153. The moving party bears the burden to demonstrate the absence of a genuine issue of material fact within the record. *Id*. at 152. "Once the moving party has pointed to the absence of adequate evidence supporting the nonmoving party's case, the nonmoving party must come forward with facts that show a genuine issue for trial." Id. (internal quotations omitted). "[T]he nonmoving party may not rest upon mere allegations or denials of the [movant's] pleading, but must set forth specific facts showing that there is a genuine issue of material fact as to each issue upon which [s/he] would bear the ultimate burden of proof at trial." *Id*. The nonmoving party cannot rely on "conclusory allegations" or "improbable inferences." *Id*. "The test is whether, as to each essential element, there is 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id*.

*Statute of Limitation*

The parties' first area of disagreement is whether the New York or Massachusetts statute of limitations should apply. Not surprisingly, both defendants argue that New York's strict three year statute should apply because both defendants are citizens of New York, the non-consensual oral sex took place in New York, Doe's long delay in filing suit offends New York's statute of limitations for personal injury cases, and the alleged tortuous conduct of WOL occurred in New York. The plaintiff argues that the Massachusetts statute of limitations with its liberal tolling provisions should apply because Doe is, and always has been, a Massachusetts resident, Bowen formed a relationship with Doe as a youth in Massachusetts, Doe became interested in the WOL program and summer camp from presentations made by WOL in a Massachusetts church, many of the instances of sexual contact took place in Massachusetts, and Bowen travelled to Massachusetts in a WOL company vehicle for his liaisons with Doe.

As a rule, federal courts sitting in diversity will answer a choice of law question by choosing the statute of limitations that would be applied by a court of the forum state. *See generally Stanley v. CF-VH Assocs.*, 956 F. Supp. 55, 57 (D. Mass. 1997) (in diversity actions, where more than one state has a connection to a plaintiff's claims, federal courts apply the statute of limitations that would be applied by the forum state). Thus, Massachusetts choice of law principles determines whether a New York or a Massachusetts statute of limitations will apply in this case. For choice of law questions involving the applicable statute of limitations, Massachusetts follows the Restatement (Second) of Conflict of Laws, §142 (Supp. 1989). *Nierman v. Hyatt Corporation*, 441 Mass. 693, 695 (2004), citing *New England Tel. & Tel. Co. v. Gourdeau Constr. Co.*, 419 Mass. 658, 664 (1995). Under this so-called "functional

approach," if the forum state's statute of limitations would permit a claim to go forward, that statute will be applied unless:

> (a) maintenance of the claim would serve no substantial interest of the forum; and
>
> (b) the claim would be barred under the statute of limitations of a state having a more significant relationship to the parties and the occurrence.

*Nierman*, 441 Mass. at 695, n.5, citing Restatement (Second) of Conflict of Laws, §142(2).2.

Doe's claim would advance a substantial interest of the Commonwealth of Massachusetts, namely, a Massachusetts resident's ability to recover compensation for an alleged tortuous injury that occurred both within and without the Commonwealth. *Nierman*, 441 Mass. at 697. More specifically, Massachusetts has a substantial interest in having victims of sexual abuse compensated for their injuries. In furtherance of that interest, the Massachusetts legislature has enacted G.L. c. 260 §4C which provides a tolling of the statute of limitations for sexual assault victims who did not know, or reasonably should have known of the abuse. *Phinney v. Morgan*, 39 Mass. App. Ct. 202 (1995). "[T]he forum should not entertain a claim when doing so would not advance any local interest and would frustrate the policy of a state with a closer connection with the case and whose statute of limitations would bar the case." *Nierman*, 441 Mass. at 696, (internal citation and citation to internal quotations omitted). "Stated in affirmative terms, a forum should apply its own statute of limitations permitting the claim if it 'would advance a substantial forum interest and would not seriously impinge upon the interests of other states.'" *Nierman*, 441 Mass. at 696, quoting *Restatement (Second) of Conflict of Laws* at § 142.

I am also not prepared to find that New York has the more significant relationship to the parties. While Doe's claim would be barred by the New York statute of limitations, I am not convinced that New York has a more significant relationship to the parties and the alleged

5

tortuous conduct. At a minimum, Massachusetts has an equal, or greater relationship to the parties than New York. Doe is, and was, a Massachusetts resident. A great deal of the sexual conduct occurred in Massachusetts, including the initial contact in the form of the forced kiss. WOL solicited Doe and her parents to attend their church and summer camp through "local area missionaries" at Doe's church in Massachusetts. Accordingly, I shall apply the Massachusetts statute of limitations to this case.

*Application of the Massachusetts Statute of Limitations*

Massachusetts General Laws, Chapter 260 §4C provides a three year statute of limitations for sexual assault of a minor:

> Actions for assault and battery alleging the defendant sexually abused a minor shall be commenced within three years of the acts alleged to have caused an injury or condition or within three years of the time the victim discovered or reasonably should have discovered that an emotional or psychological injury or condition was caused by said act, whichever period expires later; provided, however, that the time limit for commencement of an action under this section is tolled for a child until the child reaches eighteen years of age.

G.L. c. 260 § 4C.

That statute incorporates a "discovery rule" to determine when the statute of limitations begins to run in circumstances where the plaintiff did not know or could not reasonably have known that he or she may have been harmed by the conduct of another. *Bowen v. Eli Lilly & Co.*, 408 Mass. 204, 205, 557 N.E. 2d 739 (1990). The three-year statute of limitations period of § 4C does not start to run "until a plaintiff has first, an awareness of [his] injuries and, second, an awareness that the defendant caused [his] injuries." *Doe v. Creighton*, 439 Mass. 281, 283 (2003), *Koe v. Mercer*, 450 Mass. 97, 101 (2007).

It is the causation prong of the discovery rule that is at issue in this case; *i.e.*, was Doe's lack of knowledge of the effects of Bowen's sexual abuse objectively reasonable. I am hard

pressed to make such a finding. Doe claims that she did not know the cause of her injuries until she counseled with Pastor Crouse in 2009, which ignores her counseling with Fran Peterson between May of 2007 and March of 2008. That counseling was occasioned by difficulties that Doe was having in a relationship that she was in at that time. According to Doe,

> We discussed a lot in regards to how my relationship with Steve and I being so secretive that kind of, you know, like having two separate lives at some point kind of created that pattern of me continuing to seek other men even though I was in a relationship.

*Doe Deposition*, p. 241-242.

Doe also testified that her relationship with Bowen was discussed from the beginning of the counseling sessions. She also testified that Fran Peterson counseled her that the relationship with Bowen "was wrong" and that it had adversely affected her present relationship.

A plaintiff who invokes the discovery rule by claiming that her delay in filing suit stems from a failure to recognize the cause of her injuries bears the burden of proving both an actual lack of causal knowledge and the objective reasonableness of that lack of knowledge. S*ee Riley v. Presnell*, 409 Mass. 239, 243–247 (1991); *Phinney v. Morgan*, 39 Mass. App. Ct. at 206. The question of when the plaintiff knew or should have known that the defendant's actions were the cause of her injuries is one of fact. *See Riley v. Presnell*, 409 Mass. at 240. To survive the defendant's motion for summary judgment, the plaintiff must demonstrate a reasonable expectation of proving that her suit was timely filed. *See Dias v. Brigham Med. Assocs*., 438 Mass. 317, 319 (2002), *Doe v. Creighton*, 439 Mass. at 283-84.

In making such an analysis, the Court is charged with examining the reasonableness of the plaintiff's delay in bringing suit from the perspective of a "reasonable person who has been subjected to the conduct which forms the basis for the plaintiff's complaint." *Doe v. Creighton*, , 439 Mass. at 284 (quoting *Riley v. Presnell*, 409 Mass. at 245). "This is not, however, a

subjective test; the only individualized characteristics that we consider in making a reasonable person analysis under G.L. c. 260, § 4C, are those that stem directly from the complained-of tort. Personal traits unrelated to the tort, such as cultural background and educational history, are not relevant to the reasonableness inquiry. We focus instead is on the nature of the abusive conduct, the injuries that the abuse inflicted, and the effect that both would have had on the causal understanding of an ordinary, reasonable person." *Doe v. Creighton*, 439 Mass. at 284.

I cannot ignore the fact that Doe sought counseling with Fran Peterson for the exact conduct that she alleges was caused by her relationship with Bowen, namely difficulty establishing and maintaining relationships with men and promiscuous behavior. She was told by her counselor that her behavior was caused, at least in part, by her relationship with Bowen and that it was wrong. To further add to Doe's burden is the fact that Doe was a 17 years old minor when the relationship started and 18 when it ended. Thus Bowen's conduct was hardly a "distant memory" when Doe reached the age of majority. *See Doe v Creighton*, 439 Mass. at 285. In *Doe v. Creighton*, the alleged abuse began when the victim was 16 and ended when she was 17. In holding that neither the nature of the Defendant's conduct, nor the injuries reported by the Plaintiff should have prevented the Plaintiff from realizing that she had been harmed by the Defendant's abuse, the Court held that:

> While a person who is victimized at an early age or over a period of years might, later in life, perceive the resulting psychological symptoms as having always been present and thus fail to connect them to a particular triggering event, in this case the abuse began when the plaintiff was sixteen and ended when she was seventeen. Thus, the defendant's conduct and its consequent effects would hardly have been a distant memory when the plaintiff reached her eighteenth birthday, the point at which the limitations period of § 4C normally begins to run. Finally, the connection between the abuse alleged here and the plaintiff's symptoms should have been particularly obvious because the abuse was a watershed event; the plaintiff's symptoms first appeared in the immediate wake of the abusive conduct.

*Doe v. Creighton*, 439 Mass. at 285.

The Plaintiff has failed to present evidence which would show that a reasonable person, subject to the same abuse as the Plaintiff and suffering the same symptoms as the Plaintiff would not have recognized that the two were connected well before 2009. Since she cannot demonstrate a reasonable expectation of making her case, the Defendants are entitled to summary judgment.

## Conclusion

For the foregoing reasons, Defandant Word of Life Fellowship's Motion for Summary Judgment (Docket No. 15) and Defendant Stephen H. Bowen's Motion for Summary Judgment (Docket No. 18) are **granted**

/s/ Timothy S. Hillman_____
TIMOTHY S. HILLMAN
U.S. DISTRICT JUDGE